**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TONY GARY,

        Petitioner,

v.                                                                          Case No. 3:14-cv-882-J-32JRK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.
_____

## ORDER

### I. Status

Petitioner initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) (Petition) on July 22, 2014.[1] He challenges a 2002 state court (Duval County, Florida) judgment of conviction for home invasion robbery and grand theft auto. He is serving life imprisonment. Respondents contend that the Petition was untimely filed, and therefore, this case must be dismissed. See Motion to Dismiss (Doc. 8) (Motion).[2] Petitioner filed a Reply (Doc. 10) (Reply) and a Memorandum of Law in Support

---

[1] Giving Petitioner the benefit of the mailbox rule, the Court finds the Petition was filed on the date he handed it to prison authorities for mailing to this Court. See Houston v. Lack, 487 U.S. 266, 276 (1988). The Court will also give Petitioner the benefit of the mailbox rule with respect to his pro se filings in state court.

[2] The Court cites to the exhibits attached to the Motion as "Ex."

of his Actual Innocence Claim (Doc. 12) (Memorandum) with an Appendix (Doc. 13). The case is ripe for review.[3]

## II. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[3] "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court, and "[t]he record provide[s] no basis for further inquiry" regarding equitable tolling. Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006). Thus, an evidentiary hearing will not be conducted.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### III. Analysis

At the conclusion of Petitioner's state court criminal trial, the jury found him guilty. Ex. C at 54-55. On March 21, 2002, the state court entered judgment against him. Id. at 80-86. Petitioner, through counsel, filed a notice of appeal. Id. at 96. On October 21, 2003, the First District Court of Appeal (DCA) per curiam affirmed the judgment of conviction without entering a written opinion. Ex. I. Petitioner's judgment became final ninety days later on January 19, 2004. See Clay v. United States, 537 U.S. 522 (2003); Close v. United States, 336 F.3d 1283, 1285 (11th Cir. 2003) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion." (citing Supreme Court Rule 13.3)).[4] Therefore, the one-year period of limitations began to run on January 20, 2004.

The limitations period ran for 211 days until August 18, 2004, when Petitioner filed a post-conviction motion to correct an illegal sentence. Ex. T at 0-11.[5] The motion was denied

---

[4] Supreme Court Rule 13.3 states, in pertinent part: "The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate."

[5] The state trial court's docket reflects that on about March 1, 2004, and July 20, 2004, Petitioner filed motions to compel the disclosure of public records. See State of Florida v. Gary, No. 16-2001-CF-9154 (Fla. 4th Cir. Ct.). Also, on about April 8, 2004, Petitioner filed

3

on October 20, 2004. Id. at 12-23. Petitioner appealed, and the First DCA per curiam affirmed with the mandate issuing on February 23, 2005. Exs. U, V. In the meantime, Petitioner filed a petition in the First DCA alleging ineffective assistance of appellate counsel. Ex. X. The petition was denied on the merits, and rehearing was denied on March 18, 2005. Exs. Y, AA. The limitations period was tolled through March 18, 2005.

The following day, March 19, 2005, the period continued to run, and it ran for 124 days until July 21, 2005, when Petitioner filed a post-conviction motion pursuant to Florida Rule of Criminal Procedure 3.850. Ex. CC at 1-66. The trial court denied the motion on March 15, 2006. Id. at 67-146. Petitioner appealed; the First DCA per curiam affirmed without a written opinion; and the mandate issued on January 30, 2007.[6] Exs. FF, II.

After the First DCA's mandate issued on January 30, 2007, Petitioner filed a petition for writ of certiorari in an attempt to invoke the discretionary jurisdiction of the Florida

---

a petition for writ of certiorari in the First DCA, requesting an order compelling the state to provide Petitioner with certain public records. Ex. L. Then on about April 13, 2004, Petitioner filed a mandamus petition against the Office of the Public Defender apparently seeking copies of records from his case. See Gary v. Office of the Public Defender for the Fourth Judicial Circuit, 1D04-1536 (Fla. 1st DCA 2004); Gary v. Office of the Public Defender for the Fourth Judicial Circuit, 877 So. 2d 769 (Fla. 1st DCA 2004). Because these filings were not collateral attacks on his conviction or sentence, they did not toll AEDPA's one-year limitations period. See Brown v. Sec'y for Dep't of Corr., 530 F.3d 1335, 1338 (11th Cir. 2008) (recognizing that a discovery motion does not toll AEDPA's one-year limitations period); see also Davis v. Barrow, 540 F.3d 1323, 1324 (11th Cir. 2008) (finding that a motion that "did not raise any legal arguments or otherwise attack the legality of his sentence" was not a tolling motion for purposes of the one-year limitations period).

[6] Petitioner filed a mandamus petition in the First DCA on about December 28, 2005. See Gary v. State of Florida, No. 1D05-6151 (Fla. 1st DCA). The First DCA denied the petition on May 3, 2006. This proceeding had no effect on the one-year limitations period because Petitioner's post-conviction appeal remained pending through January 30, 2007.

4

Supreme Court; however, the petition did not toll the one-year limitations period because it was not a "properly filed" petition. Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) ("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. . . . If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be pending, but not properly filed."). "[A] per curiam affirmance decision rendered without opinion cannot be reviewed by the state supreme court." Harmon v. Barton, 894 F.2d 1268, 1272 (11th Cir. 1990). Therefore, Petitioner's attempt to invoke the discretionary jurisdiction of the Florida Supreme Court had no effect on his federal one-year limitations period,[7] and the period expired on March 2, 2007 (30 days after the First DCA's January 30, 2007 mandate). See Davis v. Sec'y, Dep't of Corr., No. 6:12-cv-1247-Orl-36GJK, 2013 WL 1786639, at *2 n.3 (M.D. Fla. Apr. 26, 2013) (unpublished) ("[The p]etitioner's attempt to invoke the discretionary jurisdiction of the Florida Supreme Court was not a properly filed application for state post-conviction relief and did not operate to toll [the p]etitioner's federal limitations period because such relief is not available under Florida law" (citation omitted)).[8]

---

[7] The Florida Supreme Court dismissed Petitioner's attempt to invoke its discretionary jurisdiction on February 7, 2007. See Gary v. State of Florida, No. SC07-187 (Fla. 2007). Even including this additional time, the one-year limitations period would have expired on March 9, 2007, without the filing of an additional tolling motion. Thus, the Petition would still be considered untimely.

[8] Petitioner filed a successive post-conviction motion on January 16, 2007. Ex. NN at 58-59. In denying and dismissing the motion as untimely, the circuit court specifically found that

5

While Petitioner filed several motions after the expiration of the one-year period, such motions did not toll the time period because there was no time left to toll.⁹ See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating that where a state prisoner files post-conviction motions in state court after the AEDPA limitations period has expired, those filings cannot toll the limitations period because "once a deadline has expired, there is nothing left to toll"); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (per curiam) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like [the petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). The Court has reviewed the state trial and appellate courts' dockets and even giving Petitioner the benefit of every doubt, his Petition filed on July 22, 2014, is untimely.

---

"[a]ll of the facts on which the claims [in the motion] are predicated were known to the movant or his attorney, or could have been ascertained by the exercise of due diligence." Id. at 58. Petitioner appealed and the First DCA entered a per curiam affirmance on October 4, 2007, with the mandate issuing on December 27, 2007. Ex. QQ; see Gary v. State of Florida, 1D07-1876 (Fla. 1st DCA).

"An application for postconviction relief filed in state court is not 'properly filed' if it is untimely." Walton v. Sec'y, Fla. Dep't of Corr., 661 F.3d 1308, 1310 (11th Cir. 2011) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005)); see Hernandez-Alberto v. Sec'y, Fla. Dep't of Corr., 840 F.3d 1360, 1366 (11th Cir. 2016) ("The key takeaway from Pace is that an untimely application was not, and could not ever have been considered, properly filed."); Gorby v. McNeil, 530 F.3d 1363, 1368 (11th Cir. 2008) ("[W]e are satisfied that [the p]etitioner's second successive motion was untimely under Florida law. Accordingly, his motion was not 'properly filed' for purposes of AEDPA's tolling provision."). Thus, this untimely motion did not toll the one-year limitations period.

⁹ Respondents detail the procedural history of each motion filed after the expiration of the one-year limitations period. See Motion at 3-7.

"When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling." Damren v. Florida, 776 F.3d 816, 821 (11th Cir. 2015). "[E]quitable tolling is an extraordinary remedy 'limited to rare and exceptional circumstances and typically applied sparingly.'" Cadet v. State of Fla. Dep't of Corr., 853 F.3d 1216, 1221 (11th Cir. 2017) (quoting Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009)). To warrant the application of this extreme remedy, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory." Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1158 (11th Cir. 2014) (citation omitted); see Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) ("[A]n inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)).

Petitioner asserts the limitations period did not begin to run until February 3, 2014. This calculation is inaccurate. To the extent Petitioner relied to his detriment on a miscalculation of the one-year limitations period, such a miscalculation is insufficient to warrant equitable tolling. See Cadet, 853 F.3d at 1232; Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1313 (11th Cir. 2001); see also Johnson v. United States, 544 U.S. 295, 311

(2005)[10] ("We have never accepted pro se representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."); Perry v. Sec'y, Dep't of Corr., No. 6:14-cv-262-Orl-31TBS, 2016 WL 345526, at *3 (M.D. Fla. Jan. 28, 2016) (unpublished) (finding that "[f]actors such as a lack of access to a law library, lack of legal papers, ignorance of the law, lack of education, and pro se status are not considered extraordinary circumstances that would excuse an untimely habeas petition" (citations omitted)).

Insofar as Petitioner argues that he is entitled to equitable tolling because his case "ended in a miscarriage of justice" and his counsel's errors rendered counsel ineffective, he is not entitled to relief. Petitioner asserts that he is actually innocent of the grand theft auto conviction. The information charged Petitioner with robbery on June 15, 2001, and grand theft auto on June 18, 2001. Ex. C at 11-12. When instructing the jury, the trial judge stated, "The state must prove the crime was committed on June 15th, 2001." Ex. D at 269. Petitioner claims that the trial judge effectively amended the information and thus Petitioner was convicted of a crime that was not charged. See Memorandum at 2-4, 12. This is essentially ground one in the Petition; the only ground on which he challenges his conviction. See Petition at 17-19.

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the

---

[10] The general principles governing equitable tolling apply equally to § 2254 petitions and § 2255 motions. See generally Rhode v. United States, 583 F.3d 1289, 1291 (11th Cir. 2009) ("We have also recognized that the legal principles applicable to § 2254 proceedings generally apply to § 2255 motions to vacate." (citations omitted)).

8

statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). To avoid the one-year limitations period based on actual innocence, a petitioner must "present new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (quotations and citations omitted); see Schlup v. Delo, 513 U.S. 298, 327 (1995) (finding that to make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt"). Petitioner has not offered any new evidence to sustain an assertion of actual innocence. Indeed, his assertion regarding the date in the jury instructions and the date in the information is not "new" as that alleged error occurred during the trial and could have been reasonably discovered at that time.

In any event, at trial, the victim testified that the individual who broke into her house on June 15, 2001, took, among other things, her car keys, and drove off in her vehicle that day. Ex. D at 39, 43-44, 49. The victim could not identify Petitioner in a photo lineup, id. at 132, but she described the individual and told the investigating officers that he wore a "[p]ink or red or reddish pink" backpack. Id. at 53. A witness (Charles Irvin) testified that on June 18, 2001, he met Petitioner, and Petitioner "rented" the victim's vehicle to Irvin and Irvin's friend (Curtis Williams). Id. at 74-84. Irvin further testified that he dropped Petitioner off at a house and Petitioner told Irvin to return the vehicle to that house at a certain time. Id. at 79. That evening, police officers stopped Irvin and Williams in the stolen vehicle and questioned them. Irvin showed the officers where he had previously left Petitioner. Id. at 81-

9

83. The officers canvassed the area and located a red backpack. Id. at 101-04. Inside the backpack were several items, including two ashtray covers. Id. at 105-06. The ashtray covers were of the same type missing from the stolen vehicle. Id. at 107. The house at which the backpack was located belonged to Petitioner's sister. Id. at 115, 117, 130-31, 181.

An investigating detective testified that Petitioner confessed to the robbery and grand theft during his interview. Id. at 139-41. In the presence of the detective and at the detective's request, Petitioner wrote an apology letter (a copy of which was admitted into evidence). Id. at 142. He addressed the letter to "the elderly woman with the walker and little dog," and explained that "it was never [his] intention to hurt or harm [her]." Id. at 144. The detective testified at trial that he did not provide Petitioner with any details of the crimes. Id. at 140. About a month after his interview with the detective, Petitioner wrote another letter to the victim. Id. at 149-50. Petitioner took the stand at his trial and professed his innocence. Id. at 194-217. He testified that he wrote the apology letter because the detective asked him to do so. Id. at 209-14.

Upon review of the record, the Court finds that Petitioner has not met his burden of showing "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle, 672 F.3d at 1011. Petitioner cannot overcome the one-year limitations based on his alleged actual innocence.

Finally, in the Reply, Petitioner cites to Martinez v. Ryan, 132 S. Ct. 1309 (2012), and apparently asserts that his one-year limitations period runs from the date of this decision under 28 U.S.C. § 2244(d)(1)(C). The Eleventh Circuit recently explained:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S. Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements). The Supreme Court later extended Martinez's rule to cases where state procedures, as a practical matter, make it "virtually impossible" to actually raise ineffective-trial-counsel claims on direct appeal. Trevino, 569 U.S. at - - - , 133 S.Ct. at 1918-21.

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017).

"Martinez did not announce a new rule of constitutional law" and did not affect the triggering date in § 2244(d)(1)(C). Chavez v. Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 945 (11th Cir. 2014); see Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1262 (11th Cir. 2014) ("The 'constitutional right' triggering event in § 2244(d)(1)(C) is also inapplicable to [the petitioner's] Martinez-based claims because Martinez did not announce a new rule of constitutional law."). Moreover, Martinez did not discuss the one-year limitations period or provide a basis for the tolling of that period. See Arthur v. Thomas, 739 F.3d 611, 630-31 (11th Cir. 2014) (recognizing that "[a]t no point in Martinez or Trevino did the Supreme Court mention the 'statute of limitations,' AEDPA's limitations period, or tolling in any way" and

11

holding "that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period"); see also Lambrix, 756 F.3d at 1262 (A petitioner "cannot seek equitable tolling of the limitations period based on Martinez because we have rejected the notion that anything in Martinez provides a basis for equitably tolling the filing deadline." (internal quotations and citations omitted)). Petitioner's reliance on Martinez is misplaced.

In sum, the Petition is untimely and Petitioner has failed to show an adequate reason why the dictates of the one-year limitations period should not be imposed upon him. Accordingly, it is

**ORDERED**:

1. The Petition (Doc. 1) is **DISMISSED with prejudice** as untimely.

2. The Clerk shall enter judgment dismissing the Petition with prejudice and close the file.

3. If Petitioner appeals the dismissal of the Petition, the Court denies a certificate of appealability.[11] Because this Court has determined that a certificate of appealability is not

---

[11] This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), "or that the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack, 529 U.S. at 484). "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. However, "[w]hen the district court denies a habeas petition on procedural grounds . . . a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find

warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of June, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 6/26
c:
Tony Gary, #276083
Counsel of Record

---

it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. After consideration of the record as a whole, the Court will deny a certificate of appealability.